**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROSA RAMIREZ, on behalf of herself and all other persons similarly situated, known and unknown, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13 C 6501 |
| v. | ) ) ) | Judge Lee |
| STAFFING NETWORK HOLDINGS, LLC d/b/a STAFFING NETWORK and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, and PONTOON SOLUTIONS, INC. | ) ) ) ) ) ) | Magistrate Judge Valdez |

**PLAINTIFF'S AMENDED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT AND FOR APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY, FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING FAIRNESS HEARING FOR <u>FINAL APPROVAL OF SETTLEMENT</u>**

Plaintiff Rosa Ramirez (hereinafter "Plaintiff"), on behalf of herself and all others similarly situated, moves this Court for an order preliminarily approving the Parties' Class Action Settlement Agreement, attached hereto as Attachment 1 (hereinafter, the "Settlement Agreement") and an order approving class certification for settlement purposes only, the form and manner of class notice, and scheduling a Fairness Hearing for final approval of settlement. In further support of this Unopposed Motion, the Plaintiff states as follows:

**I.     BACKGROUND**

    **A.     SUMMARY OF THE COMPLAINT**

On September 11, 2013, a class action lawsuit was filed in the U.S. District Court for the Northern District of Illinois. The case is presently titled *Rosa Ramirez v. Staffing Network Holding LLC, Philips Electronics North America Corporation, and Pontoon Solutions Inc.,* Case No. 13 C 6501.

Plaintiff asserts eighteen claims, or Counts, against Defendants, Staffing Network Holdings LLC, (hereinafter "Staffing Network"), Philips Electronics North America Corporation, (hereinafter "Philips"), and Pontoon Solutions, Inc., (hereinafter "Pontoon") in this Litigation. Counts I and II of the Complaint assert collective action claims for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") based on the Defendants' alleged failure to pay federally-mandated minimum and overtime wages. Counts III and VI of the Complaint assert class-wide violations of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") based on Defendants' alleged failure to pay Illinois-mandated minimum wages and overtime wages. Count IX of the Complaint asserts class-wide violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA") based on Defendants' alleged failure to pay wages for all the time worked at the rate agreed to by the parties to a class of employees.

Counts IV, V, VII, VIII, X and XI of the Complaint assert third party client liability against Philips and Pontoon under the Illinois Day and Temporary Labor Services Act ("IDTLSA") for Staffing Network's failure to pay minimum wages for all time worked, overtime wages for all time worked in excess of forty (40) hours per week, and wages at the rate agreed to by the Parties for all time worked, respectively.

Count XII of the Complaint asserts class-wide violations of the IDTLSA, based on Defendant Staffing Network's alleged failure to provide employees with proper Employment Notices as required by the IDTLSA. Counts XIII and XIV of the Complaint asserts class-wide violations of the IDTLSA for Defendant Philips' and Pontoon's, respectively, alleged failure to provide Staffing Network employees with a work verification on instances when Staffing Network employees were assigned to work a single day.  Counts XV and XVI asserts class-wide violations of the IDTLSA for Defendant Philips' and Pontoon's, respectively, alleged failure to

2

maintain and remit an accurate record of hours worked by Plaintiff and similarly situated employees to Staffing Network. Counts XVII and XVIII asserts individual claims for retaliation against Defendants.

Defendants dispute that Plaintiff and the Members of the Class are owed minimum or overtime wages or other wages at the rate agreed to by the Parties. Defendants also dispute that they failed to comply with their obligations under the IDTLSA.

### B.     SUMMARY OF THE SETTLEMENT TERMS

As set forth more fully herein Class Counsel performed extensive discovery in this matter and reviewed extensive time and payroll records and other documents produced by Defendants for the Plaintiff and for the Class. These records included recorded hours worked and paid, email correspondence between Defendants Philips and Staffing Network regarding daily assignment of laborers to Philips by Staffing Network, the time these laborers were dispatched to Philips, and the time these laborers arrived at Philips. As Class Counsel reviewed these documents and engaged in oral discovery, the Parties engaged in extensive arms-length settlement negotiations which have culminated in an all-day mediation supervised by former Magistrate Judge Morton Denlow followed by multiple conference calls between the Parties and Judge Denlow, and resulted in the Settlement Agreement, attached hereto as Attachment 1. The Parties believe they were fully and adequately informed of all facts necessary to evaluate the case for settlement and reached a settlement at the mediation session. Defendants continue to deny any wrongdoing, but evaluated the risk inherent of proceeding to trial and the costs of litigation and determined the settlement reached was an appropriate compromise. The Plaintiff and her counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiff and the putative class.  The material terms of the Settlement are as follows, subject to approval by the Court:

1. **Class Definition**: The class of approximately 2,930 individuals allegedly owed unpaid wages is to be defined, for settlement purposes only, as:

   > All hourly laborers who were employed by Staffing Network in Illinois as temporary employees who were assigned to and performed work at the Philips Electronics facility located in Roselle, Illinois between September 11, 2010 and September 11, 2013.

2. **Settlement Amount**: Defendants shall make a total payment of $250,000.00 into a Qualified Settlement Fund upon preliminary approval of this class-wide settlement by the Court. The Settlement Amount will be apportioned as follows:

   a. Payment of all timely claims submitted by Claimants, determined using the formulae set forth and explained below;

   b. Payment of costs associated with administering the Settlement Amount, including the fees and costs of the Claims Administrator[1];

   c. Payment to Plaintiff in the amount of $12,000.00 in consideration for Plaintiff executing a general release of all claims against Defendants, including but not limited to her Retaliatory discharge claims; and $2,000.00 as an enhancement award for her service to the class; and

   d. Payment of attorneys' fees and costs up to $83,333.33, or the equivalent of approximately thirty three percent of the Settlement Amount.

3. **Individual Settlement Payments to the Class**: Class Members will receive a *pro rata* share of the Class Settlement Fund (which is the total Settlement Amount, minus (a) the General Release and Service Payments; (b) attorneys' fees and costs awarded to Settlement Class Counsel; (c) Administration Costs, and (d) the employer's portion of State and Federal payroll taxes), which was calculated as follows:

   a) For Claimants who self-identify as Class Members who regularly took transportation provided by Staffing Network to Philips:

---

[1] Plaintiff's counsel has received a quote from Settlement Services Inc. ("SSI"), who will act as the Claims Administrator in this matter estimating a total claims administration cost of $20,200.

        i.      Individual Settlement Payment = (Total Shifts * 30 minutes * $8.25) + (Total Shifts * 15 minutes * $8.25)

b)     For Claimants who self-identify as Settlement Class Members who regularly used alternative means of transportation to Philips:

        i.      Individual Settlement Payment = Total Shifts * 15 minutes * $8.25

c)     The variable "Total Shifts" will be calculated as follows for each Claimant

        i.      Total Shifts = total hours worked at Philips / 8

d)     In no event shall Defendants be required to pay more than the amount attributed to the Settlement Amount. If the aggregate of the Individual Settlement Payments paid to all Claimants plus the applicable employment payroll taxes and insurance amounts is above the amount attributed to the Class Settlement Fund, then all claims will be reduced by an appropriate percentage to bring the aggregate down to the amount attributed to the Class Settlement Fund. Each Claimant's individual Settlement Payment shall be ratably reduced as follows:

        i.      Adjusted Settlement Payment = (Individual Settlement Payment / Sum Individual Settlement Payments) * Class Settlement Fund.

e)     In the event that a remainder of the Class Settlement Fund exists after the Claims Administrator calculates all Settlement Payments, such funds shall be distributed to all Claimants on a pro rata basis. Each Claimant's individual Settlement Payment shall be ratably increased as follows

        i.      Adjusted Settlement Payment = Individual Settlement Payment + [(Individual Settlement / Sum Individual Settlement Payments) * Remainder.]

4. **Prospective Relief:** In addition to the above referenced payments, Defendants Philips and Pontoon have each agreed to implement practices that will help ensure compliance with the FLSA, IMWL, IWPCA and IDTLSA and ensure that the alleged violations do not occur.

Within thirty (30) days of the Court's final approval of this Settlement Agreement, Defendants Philips and Pontoon will ensure that all day or temporary laborers have electronic access to the information required to be included in the "Work Verification Form," as that term is defined by the IDTLSA. However, if the day or temporary laborers enter their own time, they will be responsible for doing so prior to electronically accessing this information

(because their input of their time is the timekeeping protocol for such employees for payroll purposes). In the event a day or temporary laborer does not have electronic access to the information required to be included in the Work Verification Form, such day or temporary laborer will be provided a document containing such information upon request.

## II. STANDARD FOR PRELIMINARY APPROVAL

The settlement or compromise of a class action requires district court approval. Fed.R.Civ.P. 23(e). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. 2014) (*citing Isby, et al. v. Bayh, et al*., 75 F.3d 1191, 1196 (7th Cir. 1996)).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the Class Members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc*., 327 F.3d 938 (9th Cir. 2003).

## III. CERTIFICATION OF CLASS IS APPROPRIATE

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should view

the facts in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980). The Court's role is to determine whether Plaintiff is asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. See H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974).

### A. Plaintiff's Claims Should be Certified as a Class Action

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id*.

Second, the action must satisfy one of the conditions of Rule 23(b). *Id*. Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty Class Members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiff's claims meet the requirements for class treatment of this Lawsuit.[2]

---

[2] As outlined in the settlement papers, Defendants believe that class certification is warranted for settlement purposes only, and reserve all defenses to class certification in the event that the settlement

### 1. Certification Under Rule 23(a)

#### a. Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of Class Members, and the ability of Class Members to institute individual lawsuits should also be considered. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Id.* at 1333. In this case, the Parties have established that the class is composed of 2,930 individuals. The size of this putative class easily satisfies Rule 23(a)(1).

#### b. Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 484 (7th Cir. 2012). (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In order to satisfy this requirement, there needs to be just one common question of law or fact but that common question cannot be just a superficial similarity. *Dukes*, 131 S. Ct. at 2556; *Jamie S.*, 668 F.3d at 497. Not only must the class claims "depend on a common contention," that common contention "must be of such a nature that it is capable of

---

class is not certified. To the extent that Plaintiff's arguments are not specifically limited to "for settlement purposes only," Defendants do not join in them, and specifically reserve their right to argue that class certification is not appropriate should the Settlement not by Finally Approved, or should it become void for any other reason per *Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004).

class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie* S., 668 F.3d at 497.

Here, Plaintiff's claims are based on questions of fact and law common to the class. Each Class Member was allegedly employed by Defendants and subject to Defendants' compensation and record keeping policies during the Class period, including, for example: a) the alleged practice by Defendant of requiring laborers assigned to Philips to report to work at Staffing Network's office in advance of their shift to receive transportation to Philips to ensure laborers arrived at Philips at least 15 minutes before their scheduled shift; b) the alleged practice of requiring laborers to remain engaged to wait by their lines at Philips 15 minutes before their scheduled shift each day; (c) the alleged practice of not compensating Class Members for any pre or post shift work include travel time and "engaged to wait" time; d) the alleged practice by Defendant Staffing Network of not providing Plaintiff and Class Members with an employment notice at the beginning of their assignment; and e) Defendant Philips' and Pontoon's alleged practice of not keeping an accurate record of the hours worked by temporary laborers assigned by Defendant Staffing Network to work at Philips and not providing these laborers with a work verification on days when they were assigned to work for a single day. The common questions are whether Plaintiff and Class Members were not paid for all time worked, including pre and post-shift work time, and whether Defendants' record keeping policies complied with the notice requirements of the IDTLSA. The resolution of these questions will resolve the matter for the entire class.

### c.      Typicality -- Rule 23(a)(3)

The question of typicality is closely related to the preceding question of commonality. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or

practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). To meet the typicality requirement, there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The claims here of Plaintiff and Class Members arise from the same alleged conduct of Defendants. Plaintiff alleged Defendants failed to pay her for all time worked including due to a policy by Defendant to require Plaintiff and Class Members to perform pre and post shift work in the form of compensable travel time and "engaged to wait" time without compensation, resulting in the violations of the FLSA, IMWL, IWPCA and IDTLSA.

### d.    Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires that the named class representative "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Lau v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 40066, 17 (N.D. Ill. 2007)(citing *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)). The burden of demonstrating that the class representative is adequate is not heavy" *Sledge,* 182 F.R.D. at 259.

Plaintiff satisfies this standard here. Plaintiff does not have antagonistic or conflicting claims with other members of the class. Plaintiff and the class were all employed by Defendants in the State of Illinois and all seek unpaid wages pursuant to a state obligation or agreement to be

compensated for all hours worked. Plaintiff also has a sufficient interest in the outcome to ensure vigorous advocacy. Adequacy requires the named plaintiff to be conscientious and to "understand the basic facts underlying his claims." *Id*. Plaintiff here understands the general foundation of the case, has had her deposition taken by all three Defendants, assisted Class Counsel in reviewing and analyzing documents produced by Defendants, assisted with written discovery and participated in all day mediation to explore an amicable resolution of this matter. This qualifies Plaintiff as "conscientious representative plaintiffs" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

As explained, *infra*, Section V(C), the Plaintiff's attorneys are qualified and able to conduct the proposed litigation vigorously.

### B. This Action Satisfies the Requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiff seeks certification under Rule 23(b)(3). *See Allen v. International Truck and Engine Corp*., 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the interest of class members in individually controlling separate actions, any litigation concerning

the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll International Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issue is whether Defendants' compensation policies violated the FLSA 29 U.S.C. §201 *et seq*., the IMWL 820 ILCS 105/1, *et seq*., the IWPCA, 820 ILCS 115/1, *et seq.*, and the IDTLSA, 820 ILCS 175/1, *et seq*. The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is a common nucleus of operative fact that concerns Defendants' compensation policies.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *thousands* of individual lawsuits and piecemeal litigation.

### C.    Plaintiff's Counsel Should be Appointed Class Counsel

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class

counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all these requirements are met. Plaintiff's attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. Plaintiff's counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA, the IDTLSA and the ECA and proceeded as class actions and/or collective actions under §216(b) of the FLSA.[3]

## IV.   THE PARTIES' PROPOSED SETTLEMENT

After substantial litigation including extensive discovery, followed by extensive negotiations, including numerous in-person and telephonic meetings between counsel,

---

[3] Plaintiff's Counsel has regularly been designated as class counsel in class action employment litigation including: *Alvarado et al. v. Aerotek*, Case No. 13 C 6843 (Final Approval 1/29/2015); *Dickerson v. Rogers' Premier Enterprises, LLC* Case No.13 C 7154 (Final Approval 01/07/15);; *Hernandez v. ASG Staffing, Inc.*, Case No. 12-2068 (Final Approval 12/11/14); *Blancas et al. v. Cairo and Sons Roofing, Co. Inc.*, Case 12 C 2636 (Final Approval 12/12/2013); *Dean et al. v. Eclipse Advantage Inc., et al* Case 11-C-8285 (Final Approval 12/17/2013); *Gallegos et al v. Midway Building Services, LTD et al.*, Case No. 12-C-4032 (Final Approval 10/02/2013); *Craig v. EmployBridge et al.*, Case No. 11-C-3818 (Final Approval 04/04/13); *Smith et al. v. Dollar Tree Distribution, Inc.*, Case No. 12-C-3240 (Final Approval 2/27/13); *Ramirez et al. v. Paramount Staffing of Chicago, Inc.*, Case No. 11-C-4163 (Final Approval 1/29/13); *Bautista et al v. Real Time Staffing, Inc.*, Case No. 10-C-0644 (Final Approval 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.*, Case No.11-C-2229 (Final Approval 07/12/12); *Jones et al v. Simos Insourcing Solutions, Inc.*, Case No. 11-C-3331 (Final Approval 05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.*, Case No. 11-C-2162, (Final Approval 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.*, Case No. 10-C-6083 (Final Approval 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.*, Case No. 11-C-3818 (Final Approval 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.*, Case No. 08-C-4912 (Final Approval 03/29/10); *Arrez et al v. Kelly Services, Inc.*, Case No. 07-C-1289 (Final Approval 10/08/09); *Acosta et al v. Scott Labor LLC et al.*, Case No. 05-C-2518 (Final Approval 03/10/08); *Ortegon et al v. Staffing Network Holdings, LLC et al.*, Case No. 06-C-4053 (Final Approval 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.*, Case No. 06-C-5066 (Final Approval 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.*, Case No. 05-C-2682 (Final Approval 05/17/06).

investigation by the Parties and their Counsel, the Parties have reached an agreement to settle Plaintiff's claims asserted in Counts I through XIII of the Complaint on a class-wide basis. A summary of the settlement terms are outlined below.

### A. The Settlement Class Definition and Settlement Period

As part of the Settlement, the Class is defined as:

> All hourly laborers who were employed by Staffing Network In Illinois as temporary employees who were assigned to and performed work at the Philips Electronics facility located in Roselle, Illinois between September 11, 2010 and September 11, 2013.

### B. The Settlement Amount and Injunctive Relief

Under the terms of the Settlement Agreement, Defendants shall make a total payment of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00), less the following amounts, to create a Class Settlement Fund:

1. The funds necessary to pay for the cost associated with administering the Settlement Amount, including the fees and costs of the Claims Administrator

2. Twelve Thousand and 00/100 Dollars ($12,000) in consideration for Plaintiff executing a general release of all claims against Defendants; and $2,000.00 as an enhancement award for her service to the class, as approved by the Court

3. An amount of up to thirty three percent of the Settlement Amount or Eighty Three Thousand Three Hundred Thirty Three and 33/100 Dollars ($83,333.33) as payment of attorneys' fees and costs, as approved and awarded by the Court.

Additional settlement terms are set forth in the complete Settlement Agreement, filed contemporaneously herewith.

In pursuing the claims of Class Members, and in evaluating the merits of the Settlement, Class Counsel has reviewed extensive time and payroll records produced by Defendants for the Plaintiff and for the Class including but not limited to: a) Defendants' Answers to Plaintiff's written Discovery b) documents reflecting recorded time worked and paid for Plaintiff and the

Class; and c) email correspondence between Defendants regarding the assignment of laborers to work at Philips' packaging facility in Roselle Illinois.

The Parties used the above-described information to design a formula that would provide Class Members with significant monetary relief based on Plaintiff's theory of liability and the period of the time during which they worked at Philips' facility in Roselle, Illinois. Each Class Member's unpaid wage claims shall be based on the following formulae:

a) For Claimants who self-identify as Class Members who regularly took transportation provided by Staffing Network to Philips:

    i. Individual Settlement Payment = (Total Shifts * 30 minutes * $8.25) + (Total Shifts * 15 minutes * $8.25)

b) For Claimants who self-identify as Class Members who regularly used alternative means of transportation to Philips:

    i. Individual Settlement Payment = Total Shifts * 15 minutes * $8.25

c) The variable "Total Shifts" will be calculated as follows for each Claimant

    i. Total Shifts = total hours worked at Philips / 8

d) In no event shall Defendants be required to pay more than the amount attributed to the Settlement Amount. If the aggregate of the Individual Settlement Payments paid to all Settlement Class claimants plus the applicable employment payroll taxes and insurance amounts is above the amount attributed to the Class Settlement Fund, then all claims will be reduced by an appropriate percentage to bring the aggregate down to the amount attributed to the Class Settlement Fund. Each Class claimant's individual Settlement Payment shall be ratably reduced as follows:

    i. Adjusted Settlement Payment = (Individual Settlement Payment / Sum Individual Settlement Payments) * Class Settlement Fund.

e) In the event that a remainder of the Class Settlement Fund exists after the Claims Administrator calculates all Settlement Payments, such funds shall be distributed to all Settlement Class Claimants on a pro rata basis. Each Class claimant's individual Settlement Payment shall be ratably reduced as follows

    i. Adjusted Settlement Payment = Individual Settlement Payment + [(Individual Settlement / Sum Individual Settlement Payments) * Remainder.]

As noted above, Defendants Philips and Pontoon have each agreed to implement practices that have been designed as prospective relief to prevent the occurrence of any of the alleged violations in the future and to ensure compliance with the notice requirements of the IDTLSA. The injunctive relief that Defendants will adopt is as follows:

The Parties agree that Defendants Philips and Pontoon will implement the following prospective relief for a three year period from the effective date of this settlement with respect to day or temporary laborers assigned to work at any Philips facility within the state of Illinois.

> Within thirty (30) days of the Court's final approval of this Settlement Agreement, Defendants Philips and Pontoon will ensure that all day or temporary laborers have electronic access to the information required to be included in the "Work Verification Form," as that term is defined by the IDTLSA. However, if the day or temporary laborers enter their own time, they will be responsible for doing so prior to electronically accessing this information (because their input of their time is the timekeeping protocol for such employees for payroll purposes). In the event a day or temporary laborer does not have electronic access to the information required to be included in the Work Verification Form, such day or temporary laborer will be provided a document containing such information upon request.

Although Defendants dispute Plaintiff's theory of liability for unpaid wages as well as for violations of the notice requirements of the IDTLSA, Defendants have agreed to create a Class Settlement Fund and prospective relief framework as described above.

The Parties have agreed to a rigorous notice procedure designed to maximize the number of claims filed, which will be conducted by an experienced third party settlement administrator, but still expect less than 100% claim in rate. In the experience of counsel for both Plaintiff and Defendants in class cases involving temporary workers whose current address information is not always available, well less than 100% of class members typically file a claim with the Settlement

Administrator.[4] In light of this reality for cases involving low wage workers, it is highly likely that each putative Claimant will receive a higher percentage of the value of his/her claim.

### C.      Release and Bar of Claims

All Settlement Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the claims administrator shall be deemed to have relinquished all claims as set forth in Section XII of the Settlement Agreement, and to have released Defendants and the other released parties from any and all liability arising out of those claims. Upon granting final approval of the Settlement, the Court shall dismiss this matter *with prejudice*, retaining jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms

### D.      Plaintiff's Payments

In addition, as part of the Agreement, Defendants will pay $12,000.00 in consideration for Plaintiff's general release of claims against Defendants, including her claims of retaliation, and a payment of $2,000.00 as an enhancement award for Plaintiff's service to the Class.

### E.      Attorneys' Fees

Finally, pursuant to the Settlement, up to approximately thirty three percent of the Settlement Amount, or $83,333.33, as approved and awarded by the Court, will be paid to Class

---

[4] *See, for example, Alvarado et al. v. Aerotek*, Case No. 13 C 6843 (January 29, 2015) (Valdez J.) (Order granting final approval of settlement with alleged staffing agency class settlement involving 49,425 class members with 23% claim in rate; *Dickerson v. Rogers' Premier Enterprises, LLC* Case No.13 C 7154 (January 7, 2015) (Finnegan J.) (Order granting final approval of settlement with alleged staffing agency class settlement involving 567 class members with 31% claim in rate); *Dean, et al. v. Mid-West Temp Group, Inc.* No. 11 C 8285 (N.D. Ill. December 17, 2013)(Mason, J.)(Order granting final approval of staffing agency class settlement involving 1,212 class members with twenty-three percent (23%) claim-in rate); *See also* related cases *Craig, et al., v. EmployBridge of Dallas, Inc. et al.*, No. 11 C 3818, and *Hardaway, et al., v. EmployBridge of Dallas, Inc.*, No. 11 C 3200 (N.D. Ill. April 4, 2013)(Pallmeyer, J.)(Orders granting final approval of two staffing agency class settlements involving 7,066 class members with twenty-seven percent (27%) claim-in-rate);; *Alvarez, et al. v. Staffing Partners, et al.,* No. 10 C 6083 (N.D. Ill. Jan. 17, 2012 )(Finnegan, J.)(Order granting final approval of staffing agency class settlement with nine percent (9%) claim-in rate).
.

Counsel as payment for all past and future attorneys' fees that have been or will be expended and for all costs incurred and that have or will be incurred in seeing this matter through Final Approval, securing the Final Order, and defending the settlement, including the conducting of any appellate action. Payment of attorneys' fees and costs pursuant to this section shall be paid from the Settlement Amount but shall be separate from and in addition to the Class Settlement Fund.

## V.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.     Settlement and Class Action Approval Process

"Federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at 1196; *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class members, would be impracticable. The proposed Settlement therefore is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this Motion, Plaintiff requests that this Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Settlement Class Members to receive Notice of the proposed Settlement's terms and of the date and time of the fairness hearing, at which Settlement Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

**B.      The Criteria for Preliminary Settlement Approval Are Satisfied.**

**1.      The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Settlement Class Members to consider its terms.**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.
>
> *Id.*

As various courts have noted, "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement" is viewed as the "most important factor relative to the fairness of a class action settlement." *Redman*, 2014 U.S. Dist. LEXIS 15880, at *9.

In this case, Defendants have advanced various arguments that they believe are viable defenses in this matter and, at a minimum, demonstrate that prevailing on the merits or even certifying a class is uncertain if this matter proceeds in the absence of a settlement. For example, Defendants have argued that the time that Plaintiff and similarly situated employees spent waiting at Staffing Network's offices before receiving transportation to Philips is not compensable because Staffing Network did not require Plaintiff and similarly situated employees

to report to work at Staffing Network's offices, Plaintiff and similarly situated employees performed no labor at Staffing Network's offices and taking transportation provided by Staffing Network was not mandatory, but rather was available for Plaintiff's and similarly situated employees' benefit. Defendants have also argued that Plaintiff and the Class were in fact paid for all time worked, and to the extent Plaintiff and similarly situated employees were not paid for any time during which they were allegedly "engaged to wait" at Defendant Philips' facility before Plaintiff's and Settlement Class Members' shift, Defendants argue that this uncompensated time was *de minimis*.[5]

Given the uncertainty of whether the claims could be certified for class treatment, Defendants' defenses on the merits and the difficulties of proof, the terms of the Settlement Agreement compromising the class are fair and reasonable. Counsel for both Parties are experienced in class action litigation. The Parties negotiated a Class Settlement Fund which Plaintiff's Counsel believes will provide Settlement Class Members who make a successful claim on the Class Settlement Fund with substantial monetary relief based on Plaintiff's theory of liability. Given the potentially viable defenses asserted by Defendants, the recovery that Plaintiff and Settlement Class Members will receive and the strong prospective relief policies that Defendants will adopt to further prevent the alleged violations of the FLSA, IMWL, IWPCA and IDTLA, approval of this settlement is warranted.

### 2. The Settlement Was Reached Through Arm's-Length Negotiations.

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)(internal citation omitted). *See also Berenson v. Faneuil Hall*

---

[5] Plaintiff does not join in the arguments raised therein, but sets forth these arguments to inform the Court of the issues litigated in this matter.

*Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.")

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of wage and hour violations in particular. In negotiating this settlement, Plaintiff's counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case. In addition, Plaintiff's Counsel have successfully litigated and resolved over 30 class actions involving low wage laborers in the temporary staffing industry. Similarly, Counsel for Defendants are experienced class action litigators.

Settlement negotiations in this case took place over the course of several months. After a period of extensive investigation and discovery, including multiple discovery battles, multiple depositions, frequent meetings between Class Counsel and the Plaintiff, an all day mediation facilitated by former Magistrate Judge Denlow on October 23, 2015, the Parties reached agreement to resolve this litigation, the terms of which are reflected in the Stipulation of Settlement attached hereto as Attachment 1. Plaintiff's Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

### 3. The Settlement Provides Substantial Relief for Settlement Class Members

The Settlement provides substantial relief for all Settlement Class Members. All Settlement Class Members who become Claimants will receive a *pro rata* cash payment from the Class Settlement Fund based on Plaintiff's theory of liability. The Parties' formula for calculating settlement payments will also ensure that the fund is distributed in proportion to the time that

each Claimant was exposed to the alleged violations.. Additionally, the prospective relief that was negotiated as part of the settlement is aimed at providing Settlement Class Members with information regarding the terms of their employment with Defendants as well as accurate contemporaneous records of their hours worked for Defendants to further prevent any of the alleged practices under which Plaintiff's claims arise in the future.

### 4.     Payments to the Plaintiff are Appropriate and Reasonable.

The Plaintiff shall receive a payment separate from the Class Settlement Fund as specified in Section 13 of the Settlement Agreement, as an enhancement award for her role in litigating this matter and for executing a general release.  Plaintiff allegedly suffered retaliation as a result of engaging in protected activity, including protesting and complaining about Defendants' compensation practices while assigned by Staffing Network to perform work at Philips. Specifically, Plaintiff alleges that her assignment to Philips was terminated and her employment with Staffing Network was also terminated not long afterwards. No other Settlement Class Member is being asked to execute a general release. However, for purposes of their claims for unpaid wages, the Plaintiff's recovery will be equivalent to that of other Settlement Class Members as her settlement share will be calculated the exact same way as all other Settlement Class Members. As a result, the Plaintiff is not receiving preferential treatment in the settlement of their unpaid wage claims.

### 5.     Plaintiff's Request for Fees and Costs is Fair and Reasonable

Section 14 of the Settlement Agreement provides that Plaintiff's Counsel will receive up to approximately thirty three percent of the Settlement Amount (or $83,333.33), as approved and awarded by the Court, for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) responding to inquiries from and otherwise assisting Settlement Class Members regarding the

Settlement; (iii) assisting in the review of claims submitted by Settlement Class Members; (iv) assisting in resolving any objections; and (v) defending the Settlement and securing the Final Order, including the conduct of any appellate action.

When the amount of the Settlement in this case was negotiated, Defendants' offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement,* 444 U.S. 472, 478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." *Id.* at 563 (*citing Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1989) (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"). Where a common fund is created in return for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. *Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including this Circuit, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the

perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When determining a reasonable fee in a class action settlement, courts in the Seventh Circuit typically use the percentage basis rather than a lodestar or other basis. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). In deciding fee levels in common fund cases, the Seventh Circuit has consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007)(*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). The normal rate of compensation in the market is one-third of the common fund recovered because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment. *George v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, 7-9 (N.D. Ill. 2012). See also *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)(The typical contingent fee is between 33 and 40 percent in common fund cases.) *See also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. Ill. 2007)(vacating district court's decision to cap fees at 15% of multi-million dollar common fund after finding court misapplied common fund doctrine in case involving fee-shifting statute); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)(vacating district court's decision to cap fees at 10% of multi-million dollar common fund after finding court had failed to follow market-based approach).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases brought under the IWPCA, and IMWL, by both federal and state court judges. In *Arrez v. Kelly Services, Inc.*, Case No. 07 C 1289, the court

approved the IWPCA and IDTLSA classes and awarded class counsel, including Plaintiff's Counsel in the instant matter, 30% of the $11,000,000.00 common fund. Indeed, courts around the country frequently award fees in common fund cases in the 30% to 50% range. *See* 18 Class Action Reports at 537 (1995).

The fee requested here, representing approximately thirty three percent of the total Settlement Amount is less than typical of amounts of awards made and fees negotiated in the Chicago area.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff makes the unopposed request that the Court: (i) grant this Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification of the class identified herein; (iii) approve the Notice of Class Action, Proposed Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; (vi) enter the Proposed Order of Preliminary Approval attached hereto as Exhibit G to Attachment 1; and (vii) grant all further relief deemed just and proper.

Respectfully submitted,

Dated: February 27, 2015

s/Christopher J. Williams
Christopher J. Williams
Alvar Ayala
Workers' Law Office, PC
401 S. LaSalle Street, Suite 1400
Chicago, Illinois 60605
(312) 795-9121

Attorneys for Plaintiff